FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2009 MAY 20 P 2: 03

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES EX REL FUNK AND VRANKOVIC

　　　　Plaintiff

v.

NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION

　　　　Defendant

Case No. 1:09cv576 CMH/TRJ

**JURY TRIAL DEMANDED**

<u>FILED UNDER SEAL</u> unsealed
pursuant to 31 U.S.C § 3730(b)(2)   11/29/11

# COMPLAINT

Qui Tam Relators, Paul Funk and Andrew Vrankovic ("Relators" or "Mr. Funk" and "Mr. Vrankovic") bring this action in the name of the United States Government for false claims that were submitted or caused to be submitted to the United States Government by Defendant Northrop Grumman Space & Mission Systems Corporation ("Northrop Grumman" or "Defendant") as follows:

## INTRODUCTION

1.  This is an action to recover damages and civil penalties on behalf of the United States of America ("United States") arising from false statements and claims made and presented by the Defendant, Northrop Grumman Space & Mission Systems Corporation ("Northrop Grumman"), its agents, employees, and/or co-conspirators in violation of the Federal Civil False Claims Act, 31 U.S.C.§§ 3729 et seq., as amended ("the Act"). The violations consist of fraudulent misrepresentations relating to the quantity and quality of services performed under a contract with the United States.

2.  The Act provides that any person who knowingly submits or causes to be



submitted a false or fraudulent claim to the United States for payment or approval is liable for a civil penalty of not less than $5,500 and not more than $11,000 for each such claim submitted or paid, plus three times the amount of the damages sustained by the United States. Liability attaches both when a defendant knowingly seeks payment that is unwarranted from the United States and when false records or statements are knowingly created or caused to be used to conceal, avoid or decrease an obligation to pay or transmit money to the United States. The Act allows any person having information regarding a false or fraudulent claim against the United States to bring an action for himself ("Relator(s)") and for the United States and to share in any recovery.

3.  Based on those provisions, Relators, Paul Funk and Andrew Vrankovic, seek to recover damages and civil penalties arising from the Defendant, Northrop Grumman's, presentation of false records, claims, and statements to the United States and its agents in connection with Northrop Grumman's claims for payment for services required to be performed under a contract with the United States military. Northrop Grumman's actions were designed to maximize profits illegally at the government's expense. Northrop Grumman's fraud includes the following:

    a.  Northrop Grumman fraudulently presented claims to the United States and received therefrom payment for linguist services that were not rendered under a Northrop Grumman contract with the United States military (Contract No. W912CM-04-D-0009); and

    b.  Northrop Grumman fraudulently presented claims to the United States and received payment therefrom for linguist services that were not rendered in accordance with a Northrop Grumman contract with the United States military (Contract No. W912CM-04-D-0009).

2

## JURISDICTION AND VENUE

4. The Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a), the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3730.

5. The Court has personal jurisdiction over the Defendant, Northrop Grumman Space & Mission Systems Corporation ("Northrop Grumman"), pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process and because Northrop Grumman can be found, transacts business, and presented the actionable false claims to the United States in the Eastern District of Virginia.

6. Venue is proper in the Eastern District of Virginia pursuant to 31 U.S.C. § 3732(a) because Northrop Grumman can be found, transacts business, and presented the actionable false claims to the United States in the Eastern District of Virginia.

7. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has been filed under seal and will remain under seal for a period of at least 60 days from its filing date, and shall not be served upon the Defendant until after the Court so orders.

## PARTIES

8. Relator, Paul Funk, is a United States citizen and a resident of Reston, Virginia.

9. Relator, Andrew Vrankovic, is a United States citizen and currently resides in Rijeka, Croatia.

10. Defendant, Northrop Grumman Space & Mission Systems Corporation ("Northrop Grumman")—a subsidiary of Northrop Grumman Corporation—is headquartered at

1900 Richmond Road in Cleveland, Ohio 44124 and may be served with process by serving its registered agent, C.T. Corporation System, 1300 East Ninth Street, Cleveland, Ohio 44114.

## FACTS

11. On or about March, 2004, Northrop Grumman Space & Mission Systems Corporation ("Northrop Grumman") was awarded Contract W912CM-04-D-0009 ("Contract") by the United States government to provide "interpreter and translation support" for "Operation Joint Forge" and "Operation Joint Guardian" in the Balkans. *See* Exhibit A. Upon information and belief Northrop Grumman had also entered into contract(s) in 2003 or earlier that were substantially identical or similar to the contract awarded in 2004.

12. Under the Contract—which extended until September, 2008—Northrop Grumman was required to recruit, test, train, and deploy Category I ("CAT I") linguists—linguists locally hired or hired from a region outside the Area of Operations (including the United States) and who do not require a security clearance; Category II ("CAT II") linguists—United States citizens who have been screened by the U.S. Army Counterintelligence personnel; and Category III ("CAT III") linguists—generally, U.S. citizens who possess a "Top Secret" security clearance—in support of United States military operations in the Balkans theater.

13. Under the Contract, Northrop Grumman agreed to charge the United States and the latter agreed to pay Northrop Grumman only for the **actual** number of days worked by each linguist during the Contract period.

14. For example, in Contract Order No. 4—which was awarded to Northrop Grumman on April 29, 2004—Northrop Grumman agreed to recruit and deploy in the period

4

May 1, 2004 to May 31, 2004 the following linguists to assist with Operation Joint Forge and Operation Joint Guardian in the Balkans theater:

"Operation Joint Forge"

> 141 CAT I linguists for 31 days at the rate of $56.54/linguist/day for a total of $247,136.34
>
> 68 CAT II linguists for 31 days at the rate of $220.24/linguist/day for a total of $464,265.92
>
> 12 CAT III linguists for 31 days at the rate of $287.11/linguist/day for a total of $106,804.92

"Operation Joint Guardian"

> 339 CAT I linguists for 31 days at the rate of $65.89/linguist/day for a total of $692,439.01
>
> 90 CAT II linguists for 31 days at the rate of $243.34/linguist/day for a total of $678,918.60
>
> 8 CAT III linguists for 31 days at the rate of $889.14/linguist/day for a total of $220,506.72

The other Orders for linguist support services executed by Northrop Grumman and the United States under the Contract during the period March, 2004 through September, 2008 contain the same **"daily rate"** billing structure.

15. Northrop Grumman knowingly and systematically defrauded the United States by presenting explicit and/or implicit false claims to the Contracting Authority for payment. That is, throughout the term of the Contract, Northrop Grumman knowingly presented claims to the United States for linguist services that Northrop Grumman did not render to the United States.

16. Specifically, Northrop Grumman knowingly presented invoices to the United States

5

in which Northrop Grumman represented that its linguists worked days that, in fact, the linguists had not worked.

17. For example, during the period 2003 to 2008, Northrop Grumman's CAT I, CAT II, and CAT III linguists deployed in support of "Operation Joint Forge" and "Operation Joint Guardian" frequently worked only *24* or *25* days per month. Nevertheless, Northrop Grumman knowingly presented invoices to the United States in which the company falsely represented that these CAT I, CAT II, and CAT III linguists worked *30* or *31* days per month; charged the United States for the linguists' services for 30 or 31 days at the "daily rate," without pro-rating the invoices for the days (6 or 7) not worked by the linguists; and received compensation from the United States for the 6 or 7 days per month *not* worked by these linguists.

18. Additionally, Northrop Grumman knowingly presented invoices to the United States in which the company falsely represented that its CAT I linguists deployed in support of "Operation Joint Forge" and "Operation Joint Guardian" worked *30* or *31* days per month in months in which these linguists worked only *16* or *17* days; charged the United States for the linguists' services for 30 or 31 days at the "daily rate," without pro-rating the invoices for the days (14 or 15) not worked by the linguists; and received compensation from the United States for the 14 or 15 days per month **not** worked by these linguists.

19. Additionally, Northrop Grumman knowingly presented invoices to the United States in which the company falsely represented that CAT II, and CAT III linguists deployed in support of "Operation Joint Forge" and "Operation Joint Guardian" worked 30 or 31 days per month in months in which these linguist worked only **10 or 11** days; charged the United States for the

6

linguists' services for 30 or 31 at the "daily rate," without pro-rating the invoices for the days (19 or 20) not worked by the linguists; and received compensation from the United States for 19 or 20 days per month not worked by these linguists.

20. Additionally, during the period 2003 to 2008, Northrop Grumman created fraudulent invoices for its CAT I, CAT II, and CAT III linguists representing that these linguists worked entire 30 day periods when, in fact, Northrop Grumman knew that the linguists had worked less than 30 days and Northrop knew that its Agreements with the linguists required pro-rated billing of their work.

21. Northrop Grumman's above-described false claims to the United States resulted in the United States paying Northrop Grumman in excess of **$30,000,000** for services that Northrop Grumman did not render to the United States and that United States taxpayers did not receive.

22. In addition to presenting claims for linguist services not rendered, Northrop Grumman knowingly presented claims for such services that were not rendered in accordance with the terms of the Contract's Statement of Work.

23. Specifically, Northrop Grumman retained and deployed as CAT I linguists in support of "Operation Joint Forge" and "Operation Joint Guardian" persons who did not satisfy the ILR target language proficiency requirements in the SCRL language(s) required by the Contract. Northrop Grumman's retention and deployment as linguists of numerous individuals who did not meet the ILR target language proficiency requirements undermined "Operation Joint Forge" and "Operation Joint Guardian."

24. Northrop Grumman's retention and deployment of numerous linguists who did not

meet the Contract's language proficiency requirements undermined "Operation Joint Forge" and "Operation Joint Guardian."

25. From 2002 to 2007, Relator, Andrew Vrankovic, served as the Site Manager for Northrop Grumman Technical Systems' Balkan Linguist Program in Bosnia, Croatia, and Hungary. In this capacity, Mr. Vrankovic directed three deputy site managers' activities (operations, finance, and supply), eight area supervisors, and ten local national administrative support staff, providing linguist support services; and up to 359 linguists at 17 U.S. Army/SFOR major base camps, forwarding operating bases, exercise staging areas and port operations in Bosnia, Croatia and Hungary until the U.S. Forces' final drawdown in March 2007. Amongst his responsibilities, Mr. Vrankovic monitored payroll, supply, accountability and general record keeping operations; monitored selection, placement and maintenance of local national and US (Secret/Top Secret) linguists according to the Statement of Work; supervised recruiting, medical exams, uniform and equipment issue, in and out-processing, linguist screening, acquiring of access badges, translator performance, preparation, documentation and cash distribution of up to $500K monthly payroll and $45K Imprest Funds reimbursements; and participated in corporate monthly and quarterly program reviews with G2 requiring activity, and WCC in accordance with management direction. From 2007 to 2008, Andrew Vrankovic served as Site Manager and New Business Development manager for Northrop Grumman Technical Systems in Eastern Europe. In this capacity, Mr. Vrankovic managed the residual linguist support for the NATO Commanding U.S. Army General, Special Operations Advisor and the U.S. NIC in Sarajevo under the USAREUR G2 linguist contract; developed new business strategies for the Balkans region,

8

identified new NATO/EUFOR contracting opportunities resulting in two J2 contract awards; and provided technical guidance to NGTS staff members establishing linguist operations in Eastern Europe during Joint Task Force East's Proof of Principle's initial exercise in Romania and Bulgaria. Therefore, Andrew Vrankovic has direct and independent knowledge of the facts set forth in paragraphs 11 through 24 *supra*.

26. From 2002 until 2007, Relator, Paul Funk, was employed by Defendant, Northrop Grumman, as a Site Support Manager in the Balkans. In this capacity, Mr. Funk was responsible for the sourcing, testing, hiring, and training of Secret and Top Secret linguists for all overseas missions. Mr. Funk also served in various leadership, management, and technical capacities in Bosnia, Kosovo, Croatia, Hungary, and Macedonia related to the sourcing, recruiting, and English testing of linguists in these locales. Therefore, Paul Funk has direct and independent knowledge of the facts set forth in paragraphs 11 through 24 *supra*.

## COUNT ONE
### (False Claims Act – Presentation of False Claims)
### 31 U.S.C. §§ 3729(a)(1)

27. Relators incorporate by reference the allegations made in Paragraphs 1 through 26 of this Complaint as though set forth herein in full.

28. Through the acts described above, Northrop Grumman and its agents and employees knowingly presented and caused to be presented to an officer or employee of the United States Government a false and/or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1).

## COUNT TWO
### (False Claims Act – Making or Using False Record or Statement to Cause Claim to be Paid)
### 31 U.S.C. §§ 3729(a)(2)

29. Relators incorporate by reference the allegations made in Paragraphs 1 through 28 of this Complaint as though set forth herein in full.

30. Through the acts described above and otherwise, Northrop Grumman and its agents and employees knowingly made, used, and/or caused to be made or used false records and statements in violation of 31 U.S.C. §§ 3729(a)(2) in order to get such false and fraudulent claims paid and approved by the United States Government.

## COUNT THREE
### (False Claims Act – Making or Using False Record or Statement to Conceal, Avoid and/or Decrease Obligation to Repay Money)
### 31 U.S.C. §§ 3729(a)(7)

31. Relators incorporate by reference the allegations made in Paragraphs 1 through 30 of this Complaint as though set forth herein in full.

32. Through the acts described above, in violation of 31 U.S.C. § 3729(a)(7), Northrop Grumman and its agents and employees knowingly made, used, and caused to be made or used false records and statements to conceal, avoid, and/or decrease Northrop Grumman's obligation to repay money to the United States Government that Northrop Grumman improperly and/or fraudulently received. Northrop Grumman also failed to disclose material facts that would have resulted in substantial repayments to the United States.

## COUNT FOUR
### (False Claims Act – Conspiracy)
### 31 U.S.C. § 3729(a)(3)

33. Relators incorporate by reference the allegations made in Paragraphs 1 through 32 of this Complaint as though set forth herein in full.

34. Through the acts described above and otherwise, Northrop Grumman entered into a conspiracy or conspiracies to defraud the United States by getting false and fraudulent claims allowed or paid in violation of 31 U.S.C. § 3729(a)(3). Northrop Grumman also conspired to omit disclosing or to actively conceal facts which, if known, would have reduced government obligations to it or resulted in repayments from it to government programs.

35. Northrop Grumman, its agents, and its employees have taken substantial steps in furtherance of those conspiracies, *inter alia*, by preparing false records, by submitting claims for reimbursement to the Government for payment or approval, and by directing its agents and personnel not to disclose and/or to conceal its fraudulent practices.

36. The United States, unaware of Northrop Grumman's conspiracy or the falsity of the records, statements and claims made by Northrop Grumman, its agents, and employees, and as a result thereof, has paid and continue to pay millions of dollars that it would not otherwise have paid. Furthermore, because of the false records, statements, claims, and omissions by Northrop Grumman and its agents and employees, the United States has not recovered federal funds from the Defendants that otherwise would have been recovered.

### PRAYER FOR RELIEF

WHEREFORE, Relators, Paul Funk and Andrew Vrankovic, request that judgment be

entered against Defendant Northrop Grumman Space & Mission Systems Corporation ordering that:

1. That Defendant cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, *et seq.*;

2. That the Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained as a result of Defendant's actions, as well as a civil penalty against each Defendant of not less than $5,500 and not more than $11,000, for each violation of 31 U.S.C. § 3729;

3. Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the Federal Civil False Claims Act;

4. Relators be awarded all costs and expenses of this action, including attorneys' fees, pursuant to 31 U.S.C. § 3730(d);

5. Defendant be enjoined from concealing, removing, encumbering or disposing of assets that may be required to pay the civil monetary penalties imposed by the Court;

6. Defendant disgorge all sums by which it has been enriched unjustly by its wrongful conduct; and

7. The United States and Relators recover all such other relief as the Court deems just and proper.

Respectfully submitted,

By: _____
Mark Hanna
Virginia Bar Number 45442
MURPHY ANDERSON PLLC

12

1701 K St. NW, Suite 210
Washington, DC 20006
(202)223-2620
(202)223-8651 (Fax)
mhanna@murphypllc.com
*Local counsel for relators*


Scott Newar
700 Louisiana, 25th Floor
Houston, Texas 77002
(713) 220-9155
(713) 223-9319 (Fax)
newar@newarlaw.com
*Lead counsel for relators*
*Pro hac vice forthcoming*

13